## TARVER *versus* RICHARDSON AND RICE.

1. Where one became the purchaser of a diseased slave, at a stipulated valuation, under an agreement, that she was to be retained, and if she did not recover, was not to be paid for :—held, that the period of the slave's recovery was limited to the maturity of the note, given for her value ; or at least, to the expiration of such reasonable time, as a jury might determine.

2. Where, in such case, several months after the sale, the slave was tendered the vendor, but refused ; and subsequently, sold by the vendee for less than the price, first stipulated to be paid in the event of her recovery ; held, that the vendee did not thereby become liable for the original price ; but that he had the right to sell for the benefit of the vendor.

Assumpsit by Tarver, in Greene Circuit court, on several promissory notes. The notes sued on, had been given by the defendants, in part consideration of three negro slaves, one of whom was diseased ; and in consideration thereof it was agreed, that if the slave, who was sick, did not recover, the price at which she was estimated, to-wit, four hundred dollars, was not to be discharged. The sale took place in August; and in December, the slave was tendered to the vendor, who refused to receive her. The defendants afterwards sold the slave, at one hundred dollars. Upon this defence it was asked of the court, to instruct the jury, that if the vendee, after the tender, used the slave as his own, and afterwards sold her ; he thereby waived the tender previously made. But the court declined such opinion ; and charged, that the vendee had a right, after the tender, either to keep the slave, or sell her, for the benefit of the vendor.

Judgment for defendants; and exceptions to the decision of the court.

*Erwin*, for the plaintiff—*Stewart, contra.*

TAYLOR, J.—This action of assumpsit was founded on several promissory notes. It appears from the evidence, as stated in the bill of exceptions, that the defendant bought of one Ferrel, three slaves—a man, woman and child, at the price of nine hundred dollars, for a part of which sum the notes sued on were executed : that at the time of the purchase, the woman was sick, and it was agreed that unless she recovered she was not to be paid for; that the other two slaves were not worth more than five hundred dollars, which sum was paid down at the time; that the woman had not recovered in December following, (the sale was in August,) at which time Richardson tendered her back to Ferrel, who refused to receive her; that she continued valueless, and an expense to Richardson, until the fall of 1828, when Richardson sold all three for one thousand dollars, the woman being estimated in the sale at one hundred dollars.

Upon this testimony, the counsel for the plaintiff moved the court to charge the jury, " that if they believed from the evidence, that Richardson, after he made the tender as aforesaid, used and treated said negro woman as his own property, and sold her in Louisiana, that then he waived the tender previously made. But the court refused to give the instruction; and told the jury, that after the tender back, said Richardson had a right to keep or sell said negro for the benefit of the plaintiff. To this instruction, the plaintiff excepted, and it is here assigned as erroneous.

There is an obvious distinction between the agreement in this case and a warranty. The stipulation was not one of soundness, but an acknowledgment by the vendor of unsoundness, and an agreement by the

vendee to pay, should the unsoundness be removed, otherwise he was to incur no responsibility. It appears that he paid the value of the other two slaves in cash, but gave notes, payable at a future day for the woman. This seems to carry the idea, that unless the woman recovered by the time the notes matured, th ey should be void. The agreement was, " if she continued sick, she should not be paid for." " Continued sick" until when ? It would seem until the time at which payment might be demanded if she recovered, to-wit, at the maturity of the notes. It might be a matter of some doubt, if it had been proved that the woman recovered after that time, whether the notes could have been prosecuted to judgment. If there was no right of action upon the notes when they fell due, I think it probable no subsequent event would have rendered such a suit sustainable. If in a reasonable time the woman had been restored to health, though after the maturity of the notes, it is probable an action of assumpsit might have been maintained for her value ; in which would have been considered the loss and expense which the defendant had incurred in sustaining and curing her.

I do not consider the tender as having re-vested the title to the slave in the vendor—the vendee had no right to do any act which would have that effect. So far as regarded the property in the slave, the sale was unconditional ; but, so far as respected the plaintiff's right, to recover the stipulated price, it was conditional : in no event, was the vendor to take her back, or the vendee, to return her. The inference is strong, that the three slaves formed a family, of husband, wife and child ; and, that the parties to the contract did not wish to separate them—and, to prevent their be-

ing separated, was the reason of inserting the peculiar feature, in the contract, which has been dwelt upon. To determine the agreement, to constitute a warranty, would be to prevent an execution of this laudable intention, by making it the duty of the vendee, to return the woman, if she continued sick. It appears, that the woman did not recover, during the time the defendant, Richardson, retained her in his possession—rendered him no equivalent services, for supporting her—but, was an expense. But, because he sold her, it is said, he rendered himself responsible, for the whole amount, specified in the notes—although he had been at the expense of supporting her, for upwards of two years, and then sold her, for one hundred dollars. This would be very unjust: can it be law? When the agreement was made between the parties, it is unreasonable, to suppose, they intended, it should continue open, during the life of the slave, no matter how long that might be. My impression is, that payment was not to be made, unless she recovered, by the time the notes matured; but, suppose this was not the case—a reasonable time, under all the circumstances, must have terminated the liability of the defendant. I will not say, what would constitute such reasonable time: whenever that should become a question, it would be one, for a jury to settle: but I feel well satisfied, that it would be most incorrect, to determine that the defendant was bound to keep this woman, during their joint lives, and his representatives, after his death, if she survived him; or he would be responsible to the vendor, although she was of no value. Nothing, of this kind was contemplated, by the parties: the defendant acquired a right, which he could legally dis-

pose of, and there was nothing to restrain him from doing so. Suppose this property had been levied on, by virtue of executions, against the defendant, and sold—certainly that would not make him responsible, to the plaintiff; nor can his making sale of her, himself, have that effect, any more than his controling her, as his other servants.

In my opinion, the charge of the court, was highly favorable to the plaintiff. From the proof, the slave continued sick and valueless until she was sold. What the agreement was, upon which she was sold, did not appear: the defendant may have rendered himself liable to the purchaser, by warranty, or in some other way : and, his getting something for her, admitting she was still sick and worth nothing, could give the vendee no claim against him. But, if it could, the expenses which he had incurred, in sustaining the woman, should have been allowed him, out of the hundred dollars, for which he sold her.

It is unnecessary to determine what would have been the effect of proof, that the woman was of value, when the suit was brought : whether such proof would have authorised a recovery in this action, or, in one, founded on the special contract. The suggestions which have been made, on that subject, are not to be considered as indicating a settled opinion. No case has been cited by the counsel, which sheds much light upon this ; nor have I been able to find one parallel to it. The decision, in the case of *Sands &amp; Crump* vs. *Taylor &amp; Lovett,*[a] however, bears, strongly upon it. The plaintiffs, in that case, sold to the defendants a cargo of wheat. The defendants took away a small part of the cargo ; but, finding it did not answer the purpose for which they had purchas-

[a] 5 John. R. 395.

ed it—that of making malt—they refused to receive the balance. The plaintiffs gave them notice, that unless they removed the rest of the wheat, from the place in which it was stored, in a specified time; they would sell it at public auction, and charge them with the difference between the price it should bring, and that which they had contracted to give. It was, accordingly, sold, and, the sum obtained for it, was less, by upwards of a thousand dollars, than the price stipulated to be paid by the defendants; and to recover that sum, the suit was brought. There had been no representation, made to the defendants, that the wheat would malt. Judge *Spencer*, in his opinion on that case, says—" The contract between the parties, and its past execution, produced a change of property; the defendants became entitled to the wheat, and the plaintiffs to the price stipulated to be given for it. After the defendants refused to accept the residue of the cargo, it was thrown on the plaintiffs hands; and they were, by necessity, made the defendants trustees, to manage it; and being thus constituted trustees, or agents, for the defendants, they must either abandon the property to destruction, by refusing to have any concern with it, or take a course more to the advantage of the defendants, by selling it." Again, he says, " this rule operates justly, as respects both parties; for the reasons which induced the one party to refuse the acceptance of the property, will induce the other to act fairly, and to sell it to the best advantage. It is a much fitter rule, than to require of the party, on whom the possession of the thing is thrown, against his will, and contrary to the duty of the other party, to suffer the property to perish, as a condition on which his right to damages is to depend."

" There are no adjudications in the books, which either establish or deny the rule adopted in this case ; but it appears to me to be founded on principles of good sense and justice."

In the opinion delivered by Chief Justice *Kent,* in the same case, he says—" nor was the subsequent act of the plaintiffs, in selling the wheat, not delivered, a waiver of their claim for damages, for non-performance of the contract."

The reasoning used by Judges *Spencer* and *Kent,* may be applied to the case before us : nor are there any adjudications in the books, which would prevent the application of the rule, adopted in New-York, to this cause. There is no greater reason for making the sale of the slave, a waiver of the right of the defendant not to pay the full price for that which was of little or no value, than that the subsequent sale of the wheat, should operate a waiver of the claim for damages, on the part of those who sold it. Justice certainly would not be advanced by making the defendants responsible to the plaintiff in the same manner he would have been, if the negro had become sound and valuable. The offer to return her can not increase the responsibility of the defendant. The most which could have been required of him, was to keep the slave a reasonable time. It has not been contended that this was not done ; but the ground taken is, that she was sold by the defendant. This, it is insisted, made him responsible for the four hundred dollars at which she was estimated if sound, although she might have been valueless. This position is considered wholly untenable. The judgment is affirmed.